**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD PAUL E., a minor, | ) | |
| and ANNETTE S. B., individually | ) | |
| and as his Guardian and Next Friend, | ) | |
| | ) | Case No. 07 C 6911 |
| Plaintiffs, | ) | |
| | ) | Judge Joan B. Gottschall |
| v. | ) | |
| PLAINFIELD COMMUNITY | ) | Magistrate Judge Martin C. Ashman |
| CONSOLIDATED SCHOOL | ) | |
| DISTRICT 202, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT</u>

Defendant Plaindield Community Consolidated School District 202 (the "School District"), by its attorneys, Franczek Sullivan P.C., states as follows:

## I.    INTRODUCTION

1.      This suit arises from the efforts of the Plaintiffs to enforce their rights to a free, appropriate public education ("FAPE") for Paulie, a minor student with disabilities. These rights are enforceable pursuant to the Individuals with Disabilities Education Act as amended ("IDEA"), 20 U.S.C. § 1401 *et seq*. Paulie is an 11 year old child with Aspergers syndrome (a disabling condition on the autism spectrum), attention deficit hyperactive disorder ("ADHD") and Central Auditory Processing Disorder ("CAPD") who requires specially designed instruction to learn. He is currently in the 5th Grade, but should be in the 6th Grade chronologically.

**ANSWER:**    The School District admits the allegations of Paragraph No. 1, except it denies any implication that it has denied Paulie a free appropriate public education ("FAPE") and denies that Paulie should be in the 6th grade. In further answer to said Paragraph, the School District states that the Complaint references other documents or statements by footnote at the end of several paragraphs. This Answer does not respond to those references as they are not properly part of a complaint. By admitting the allegations of a specific paragraph, the School District does not admit the allegations of any footnotes.

2.      This is an appeal of the final administrative Decision and Order (the "Final Order") by Impartial Hearing Officer ("IHO"), Linda Mastandrea issued on 11/9/07 in Illinois State Board of Education ("ISBE") Case No. 2007-0332. (See Exhibit 1, Final Order). This ISBE-appointed IHO rendered this Final Order without pre-hearing or post-hearing briefs by either party even though requested by the Guardian's counsel.  This Final Order followed a special education due process hearing pursuant to the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. 1401 *et seq.* and related state law, including 23 I.A.C. Part 226.

**ANSWER:**      The School District admits the allegations of Paragraph No. 2, except that it denies that Plaintiff's counsel requested pre-hearing briefs.

3.      Neither the Plaintiffs nor their counsel have ever received a signed copy of this Final Order by certified mail as required by state law.

**ANSWER:**      The School District lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph No. 3 and, therefore, denies the same.

4.      This appeal is partially based on the procedural denial by the IHO of the Plaintiff's right to present evidence, and to confront, cross-examine and compel the attendance of witnesses.  34 C.F.R. 300.509 and 23 I.A.C. 226.625.

**ANSWER:**      The School District only admits that Plaintiffs purport to base their appeal on the allegations of said Paragraph No. 4, but deny that such allegations are correct.

5.      This appeal is also based on the factually inaccurate and incomplete Final Order that contains errors of law and misapplications of law.  That Final Order contained factual errors, omissions and misunderstandings of the administrative record, findings of facts that are contrary to the weight of evidence, and significant omissions, misinterpretations, mistakes, misapplications and/or disregard of the legal standards applicable to this case.  The Final Order specifically failed to make sufficient findings as to the credibility of witnesses and failed to explain substantial testimony and material evidence that conflicted with the findings of fact and conclusions of law.

**ANSWER:**      The School District only admits that Plaintiffs purport to base their appeal on the allegations of said Paragraph No. 5, but deny that such allegations are correct.

## II.     JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to F.R.C.P. 65; 28 U.S.C. § 1331; and 20 U.S.C. § 1415(i)(2).

**ANSWER:**     The School District admits the allegations contained in Paragraph No. 6.

7.     The Plaintiffs bring this action pursuant to the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. § 1401 *et seq.* and its Procedural Safeguards at § 20 U.S.C. § 1415, including (j) (formerly §1415(e)(3) hereinafter referred to as the "Stay Put Provision"), the Illinois School Code, 105 ILCS 5/14-8.02(a), and related state law.

**ANSWER:**     The School District admits the allegations of Paragraph 7.

8.     Venue is proper in this Court because the acts complained of occurred in and the parties reside in and do business in the Northern District of Illinois, Eastern Division.

**ANSWER:**     The School District admits the allegations of Paragraph 8.

## III.     PARTIES

9.     At all times pertinent, Plaintiff Annette S. Butler has been the Guardian of Richard Paul E. ("Paulie") and here complains Individually and as his Guardian and Next Friend.

**ANSWER:**     The School District admits the allegations contained in Paragraph No. 9.

10.     At all times pertinent, the Plaintiffs have lived in Plainfield, Illinois, in Will County, Illinois.

**ANSWER:**     The School District admits the allegations contained in Paragraph No. 10.

11.     Paulie is an 11 year old child with Aspergers syndrome, ADHD and Central Auditory Processing Disorder ("CAPD") who has had speech and language services for some time to improve his articulation and his ability to speak in response to spoken language when background noise is present.  He is currently in the 5th Grade, but should be in the 6th Grade.

**ANSWER:**     The School District admits the allegations contained in Paragraph No. 11, except that it denies that Paulie "should be in the 6th grade" and it affirmatively states that Paulie receives speech/language services for a number of reasons.

12.     Routine is important for Paulie.  He can be well-behaved and pleasant, but when his regular routine is interrupted or he is exposed to large crowds and noise, he can misbehave, become unruly and have his composure "melt down."

**ANSWER:**     The School District denies the allegations contained in Paragraph No. 12.

3

13.    Paulie at all times pertinent has been determined eligible for special education. There is no dispute as to eligibility, but there is a dispute as to whether the District's proposed placement is the least restrictive environment since it is a self-contained classroom segregated from nondisabled children, yet the Plaintiffs' proposed placement at Acacia Academy contains at least two nondisabled children in Paulie's classroom which is not self-contained.

**ANSWER:**    The School District denies that Paulie would be segregated from nondisabled children in the School District's proposed placement.    The School District denies further any implication that the School District's proposed placement is not the least restrictive environment for Paulie.    The School District also denies that the class at Acacia Academy is "not self-contained."    The School District admits the remaining allegations contained in Paragraph No. 13.

14.    The Defendant District acts as a Local Educational Agency ("LEA") under IDEA regulations found at 34 C.F.R. Part 300 *et seq*. and related state regulations found at 23 I.A.C. Part 226 and is responsible for ensuring FAPE for students with disabilities.    20 U.S.C. § 1412(a); see also 105 ILCS 5/14-1 *et seq*.

**ANSWER:**    The School District admits the allegations contained in Paragraph No. 14.

## IV.    OVERVIEW OF APPLICABLE LAW

**IEPs Must be Developed Cooperatively**

15.    The IDEA is designed to "assure that all children with disabilities have available to them ... a free and appropriate public education ("FAPE")" in the least restrictive environment. 20 U.S.C § 1400(c).

**ANSWER:**    Paragraph No. 15 states a legal conclusion that does not require a response.

16.    The IDEA has been codified in the federal regulations at 34 CFR Part 300 *et seq*. and the state regulations at 23 I.A.C. section 226 *et seq*.    23 I.A.C. section 226.10 states that "the requirements ...shall apply in every instance when a child is or may be eligible for special education and related services."

**ANSWER:**    Paragraph No. 16 states a legal conclusion that does not require a response.

17.    IDEA and its regulations contain Procedural Safeguards to ensure due process rights of presenting evidence, confronting and cross-examining witnesses.    Those Procedural Safeguards also ensure the maintenance of the child's educational status quo in a stay put placement with all services required by his IEP during a due process hearing and judicial appeals.    34 C.F.R. 1415 *et seq*.

**ANSWER:**    Paragraph No. 17 states a legal conclusion that does not require a response.

4

18.    To insure that disabled children receive FAPE, the IDEA requires that school districts work with parents to create an IEP which sets forth the child's educational goals.  20 U.S.C. §§ 1401(11), 1414(d).

**ANSWER:**    Paragraph No. 18 states a legal conclusion that does not require a response.

19.    IDEA Section 1414(d)(4)(A) requires that the school review the IEP at least annually "to determine whether the annual goals for the child are being achieved" and revise the IEP to address "any lack of expected progress toward the annual goals" and "the child's anticipated needs".

**ANSWER:**    Paragraph No. 19 states a legal conclusion that does not require a response.

20.    The IEP must include specific information such as a statement of the child's present levels of performance, including how the child's disability affects the child's involvement in the general education curriculum, annual goals and short term objectives for improvement, a description of the specifically designed instruction and services that will enable the student to meet the goals, lack of any progress towards the goals and the extent to which the child will participate with nondisabled peers.  20 U.S.C. § 1414(d).

**ANSWER:**    Paragraph No. 20 states a legal conclusion that does not require a response.

21.    The IDEA obligates the District to address the student's unique educational needs through an IEP if the District determines that the student meets the criteria for at least one of the categories of disabilities enumerated in the IDEA and its implementing regulations.  20 U.S.C. § 1414.

**ANSWER:**    Paragraph No. 21 states a legal conclusion that does not require a response.

22.    Once determined eligible, a District must provide an appropriate program and placement responsive to all of the child's unique needs. 23 I.A.C. 226.50(d).

**ANSWER:**    Paragraph No. 22 states a legal conclusion that does not require a response.

### Continuum of Placement Options

23.    The District must review a continuum of placement options, starting with the regular education classroom, to determine the least restrictive one in which the student's program can be implemented.

**ANSWER:**    The School District admits the allegations contained in Paragraph No. 23.

24.    If there is more than one appropriate placement, the District must place the student in the one that is the least restrictive.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 24 and

affirmatively states that placement is a decision based on the consideration of numerous factors.

25.    Federal and state law provides Parents with the right to request an impartial Due Process Hearing if the parents disagree with any matter related to the identification, evaluation or educational placement of the student or provision of FAPE to the child. 20 U.S.C. §§ 1415(b)(6) & (d)(2)(j); 23 I.A.C. 226.605.

**ANSWER:**    Paragraph No. 25 states a legal conclusion that does not require a response.

26.    The U.S. Supreme Court has found that schools must offer more than mere token gestures or a trifle, where the student displays considerable intellectual potential, since the IDEA requires a great deal more than a negligible benefit. *Board of Education of the Hendrick Hudson Central School District, Westchester County, et al v. Amy Rowley, et al*, 458 U.S. 176 (1982).

**ANSWER:**    Paragraph No. 26 states a legal conclusion that does not require a response.

## V.    FACTS

**Paulie Has Attended Easter Seals for Years**

27.    Prior to the 2004-2005 School Year while Paulie was enrolled in the District, Paulie had been placed at Easter Seals Therapeutic Program in Tinley Park, Illinois at the Guardian's request due to the failure of the District to properly educate Paulie in the District.

**ANSWER:**    The School District admits Paulie was placed at Easter Seals Therapeutic

Program, but denies the District failed to properly educate Paulie in the District.

**Easter Seals Admitted Academics Insufficient**

28.    Easter Seals staff admitted in testimony that it could not teach academics sufficiently to Paulie as early as January 2006 and exhibits corroborated this.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 28.

29.    In the spring of 2007, the District agreed to conduct the required entrance evaluation for Paulie at Acacia Academy, a private school for both disabled and nondisabled students in LaGrange Highlands, Illinois at the Guardian's request. Although the District claimed at hearing that this was merely an independent education evaluation, the Guardian, her advocate and the Director of Acacia Academy, Kathy Fouks, testified that the District led them to believe it was the beginning of a process for placement at Acacia.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 29, and

affirmatively states that it paid for an independent evaluation to be conducted for Paulie by

Kathy Foulks.

364784.2

30.    On June 14, 2007, an IEP Meeting was conducted for Paulie.  The notes of this meeting state, "Current speech and language, OT and social work goals will continue."

**ANSWER:**    The School District admits the allegations contained in Paragraph No. 30.

31.    Although the speech and language service goals continued in that IEP, all testimony indicates the amount of services was never discussed.  That is, there were goals, but there were no service minutes per week allocated to accomplish them in the 6/14/07 IEP.  This is a violation of law.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 31.

32.    During this IEP Meeting, the District decided to place Paulie in a self-contained classroom within the District at Meadow View and refused the Guardian's proposal for Acacia placement over the Guardian's objections.

**ANSWER:**    The School District admits the allegations contained in Paragraph No. 32, and affirmatively states that Paulie's recommended placement at Meadow View School was recommended by his IEP team.

**Multiple IEP Versions Produced by District**

33.    At the end of this IEP Meeting, the Guardian's advocate and the Mother requested a copy of the IEP Notes.  These IEP Notes document things like the comments of the participants, the options considered and the reasons for decision.  They had been input at a computer terminal during the Meeting.  The District staff initially refused to provide a copy of the IEP Notes, then agreed.  Rather than printing out the original IEP Notes (the First IEP Version) from the computer for them, the District staff person, Susan Jawor, proceeded to erase sections of paragraphs and sentences while they watched.  The District staff person made the excuse that she was "cleaning up" the IEP Notes, over the advocate's objections.

**ANSWER:**    The School District admits the allegations contained in Paragraph No. 33, except that it denies any implication that Ms. Jawor substantively altered or falsified the IEP meeting notes.

34.    After making substantial erasures, the District staff gave the Guardian's advocate the resulting printout containing both the IEP Notes and Goals (the Second IEP Version).

**ANSWER:**    The School District admits the allegations contained in Paragraph No. 34, except that it denies that Ms. Jawor made "substantial erasures" to the IEP meeting notes.  The School District further denies that a "second IEP Version" was made.

7

364784.2

35.     On June 20, 2007, Annette Butler filed a due process complaint through the District regarding violations of her rights as guardian and the rights of the minor Student, Paulie, including the key allegation that Meadow View was too restrictive. Subsequently, the District forwarded the Complaint to the Illinois State Board of Education ("ISBE") which assigned an Impartial Hearing Officer, Linda Mastandrea.

**ANSWER:**     The School District admits that Ms. Butler requested a due process hearing and

Linda Mastandrea was assigned as the hearing officer, but denies the remaining allegations

contained in Paragraph No. 35.

36.     Soon after the Guardian filed the due process Complaint, the District sent the Guardian another IEP version (the Third IEP Version) regarding the June 14, 2007 IEP Meeting, claiming it was the final IEP.  The Third IEP Version included new information including minutes of services, time in restrictive settings, but nothing about the beginning time or duration of mainstreaming with nondisabled peers or specially designed instruction & teaching approaches for reading or math.  She and the Mother finally received on June 22, 2007.  This is delay in providing an IEP to the Guardian is violation of law.

**ANSWER:**     The School District denies the allegations contained in Paragraph No. 36.

37.     This Third IEP Version was drafted by the District to improve its legal position for the hearing regarding the key allegation that Meadow View was too restrictive.

**ANSWER:**     The District denies the allegations contained in Paragraph No. 37.

38.     Of course, Paulie needs smaller class sizes so he is not overstimulated which causes him behavior problems.  So the District changed the IEP to show a regular class setting as containing fewer students.  This would make it appear that he could participate in nonacademic classes with those regular education students to make up for the restrictiveness of the self contained classroom at Meadow View.  This Third IEP Version specifically reduced the number of students the District claimed were contained in its regular education classes from 27 to 17.

**ANSWER:**     The School District denies the allegations contained in Paragraph No. 38.

38.     The District staff admitted at hearing that its proposed placement at Meadow View was a self-contained classroom.  The District argued at hearing, however, that Meadow View would still allow Paulie to participate with nondisabled students in regular education programs for nonacademic areas, like music, outside the self-contained classroom.  The District claimed that with settings of 17 (rather than 27 students), Meadow View was the least restrictive environment because Paulie would be exposed to his nondisabled peers without overstimulating. Of course, the Guardian explained that Paulie would be overstimulated anyway with 17 students and explained that this could not possibly work and that Paulie's unique needs would melt down when exposed to these relatively large, noisy crowds of small children.  Further, the District never described in any 6/14/07 IEP version the extent to which Paulie would participate with nondisabled peers as the law requires.

8

**ANSWER:**    The School District admits that a component of its proposed placement at Meadow View contains a self-contained classroom.  The School District admits that its proposed placement at Meadow View would allow Plaintiff to participate with nondisabled students in areas outside of the self-contained classroom.  The School District admits that the Guardian stated that Paulie would be overstimulated in a class with 17 students, but denies that such an allegation is correct.  The School District denies the remaining allegations contained in Paragraph No. 38.

39.    The Guardian testified that Paulie needs small settings like Acacia and would not be able to maintain his composure in a setting crowded and noisy.  This would make a setting with 27 students worse than one with 17 students and explain why the Guardian continued to object to the District's proposed placement at Meadow View.  It would also raise serious concerns about the structure of those settings because the IEP states that Paulie's environment must be structured which is typical for those on the autism spectrum.

**ANSWER:**    The School District admits that Plaintiff testified as alleged in Paragraph No. 39, but denies that such allegations are correct.  The School District denies the remaining allegations contained in Paragraph No. 39.

39.    The IHO, however, discounted the significance of this deceptive change in the IEP versions and as well as Paulie's dislike of crowds and noise.  The Final Decision favored Meadow View because the IHO concluded that Paulie could interact with lots of nondisabled children in nonacademic settings where she apparently believed that 17 students would be present as stated in the Third IEP Version.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 39, except to state that Ms. Mastandrea held that Meadow View was the appropriate placement for Paulie.

**District Violated Status Quo During Stay Put**

40.    After the Guardian filed for due process hearing, the District provided at least two written assurances that it does not dispute stay put for Paulie at Easter Seals Therapeutic School Program ("Easter Seals") and intended to provide him with his program in that setting.

**ANSWER:**    The School District admits the allegations contained in Paragraph No. 40.

41.    On September 5, 2007, the Easter Seals Coordinator Maryellen Bucci wrote a letter addressed "Dear Parents" which she sent to Annett S. Butler in which she states, "your

9

child is not receiving speech and language services." Ms. Butler became alarmed that the District could not be trusted in providing the services required by his IEP, including speech.

**ANSWER:** The School District admits that Maryellen Bucci sent a letter to Plaintiffs on September 5, 2007 regarding Paulie's speech and language services, but the School District lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegation contained in Paragraph No. 41 and, therefore, denies the same.

42. This Easter Seals letter is an admission by a party in interest, the contracting agent of the District, that the District had changed the status quo for Paulie and breached its commitment and the statutory obligation to continue stay put at Easter Seals as that program was required by his then-current IEP when the Complaint was filed.

**ANSWER:** The School District denies the allegations contained in Paragraph No. 42.

43. Easter Seals personnel wrote on the letter "[s]till getting group speech," however, does not fulfill the requirements of the then-current IEP or is it responsive to Paulie's needs.

**ANSWER:** The School District denies the allegations contained in Paragraph No. 43.

44. Paulie's services have been repeated in several IEPs as 60 minutes pull-out. That is, pull Paulie out of class for one on one, speech pathology services.

**ANSWER:** The School District denies the allegations contained in Paragraph No. 44.

45. Easter Seals asserts in its letter that "[p]er Illinois State Board of Education, Easter Seals is in compliance because all schools in this state have a 30 day grace period in between the hiring of clinical staff." *Id*.

**ANSWER:** The School District admits the allegations contained in Paragraph No. 45.

46. This statement may or may not be accurate, but even if accurate, compliance with state rules of program certification does not provide an adequate legal reason to change the status quo during the due process proceeding here, nor could it trump the federal right to stay put in the student's then-current educational placement.

**ANSWER:** Paragraph No. 46 states a legal conclusion that does not require an answer.

47. The District's breach of its commitment required the Petitioners to file a Motion to enforce the rights of the Petitioners to Stay Put under IDEA. The District thereafter came into compliance on stay put.

**ANSWER:** The School District denies the allegations contained in Paragraph No. 47, except

that it admits that Plaintiffs filed a Motion for Stay Put. In further answer to said Paragraph, the

School District states that the IHO denied Plaintiffs' Motion for Stay Put in its entirety and that

Paulie was provided with his full complement of speech/language services and minutes.

48.     By this breach of stay put, the District had further violated the procedural safeguards of the Plaintiffs.

**ANSWER:**     The School District denies the allegations contained in Paragraph No. 48.

**Guardian Discouraged from Observing Meadow View**

49.     On 6/20/06, the Plaintiffs filed a Complaint for a due process hearing with the District which was referred finally to the Illinois State Board of Education three days late, or on 6/28/07.

**ANSWER:**     The School District admits the allegations contained in Paragraph No. 49.

50.     On 6/28/07, the ISBE appointed IHO Linda Mastandrea to conduct the administrative hearing.

**ANSWER:**     The School District admits the allegations contained in Paragraph No. 50.

51.     On 7/17/07, the District finally provided the Response to the Complaint required by IDEA, but failed to do so within 10 days which was by June 30, 2007. This was a violation of procedural safeguards.

**ANSWER:**     The School District admits the allegations contained in Paragraph No. 51, except

that the School District denies that it violated IDEA's procedural safeguards.

52.     Prior to the hearing, the Guardian attempted to arrange a temporary, diagnostic placement at Meadow View to determine whether Paulie could be educated in district, but the District staff began to initiate arrangements for the diagnostic placement before the Guardian had agreed to the final terms of this temporary placement. As a result, the Guardian withdrew her offer.

**ANSWER:**     The School District denies the allegations contained in Paragraph No. 52.

53.     On 10/22/07 and 10/23/07, the IHO conducted the hearing.

**ANSWER:**     The School District admits the allegations contained in Paragraph No. 53.

54.     On 11/9/07, or six days after the required deadline, the IHO issued her Decision and Order in favor of the District.

**ANSWER:**     The School District admits the allegations contained in Paragraph No. 54.

55.     On 12/4/07, the Guardian renewed her offer to place Paulie temporarily in Meadow View as a diagnostic placement to determine whether it was in fact appropriate for Paulie.

**ANSWER:**     The School District admits the allegations contained in Paragraph No. 55 and affirmatively states that Ms. Butler presented conditions to this "diagnostic placement" that were unacceptable to the School District.  In further answer to said Paragraph, the School District affirmatively states the determination of the appropriateness of the placement was made by the Hearing Officer.

56.     On 12/6/07, the District refused the Guardian's offer for a diagnostic placement during the stay put period, even though this is the very placement proposed by the District and ordered by the IHO.  Clearly, the District does not want its proposed placement scrutinized.

**ANSWER:**     The School District admits that it refused the Guardian's offer for a "diagnostic placement," but denies the remaining allegations contained in Paragraph No. 56.

## VI.     APPEAL OF FINAL ORDER

### IHO Denied Discovery Needed to Confront District Contentions

57.     One reason for appeal of the Final Order is that the IHO denied the Parents the right to discover and present the evidence they needed on issues, and to confront and cross-examine witnesses as is their statutory right under IDEA.

**ANSWER:**     The School District denies the allegations contained in Paragraph No. 57.

58.     This prevented the Parents from confronting the District's contentions and from preparing and offering evidence of an expert report on any observed problems.

**ANSWER:**     The School District denies the allegations contained in Paragraph No. 58.

59.     It also prevented them from avoiding surprise from testimony of District witnesses whom the Parents could not effectively cross-examine as a result.

**ANSWER:**     The School District denies the allegations contained in Paragraph No. 59.

364784.2

**IHO Deferral to District Staff w/o Explaining Conflicting Evidence**

60.    Another reason for appeal of the Final Order is that it inappropriately and illogically deferred to the testimony of the District personnel who were not teaching Paulie at the time.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 60.

**Final Order Not Thorough and Complete**

61    Another reason for appeal of the Final Order is that it was not thorough and complete as shown below. The Final Order did not contain any explicit determination of the credibility of witnesses nor a systematic consideration of specific testimony or exhibits that refuted the District's evidence or contentions at hearing.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 61.

62    This lack of scrutiny of the available evidence made the Final Order a statement of personal opinion of the IHO, rather than a fair and impartial adjudication based upon a complete review of the evidence.  Because of the Final Order was not thorough and complete, it could not fairly determine that the issues presented at hearing.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 62.

**Final Order Contains Multiple Mistakes of Law & Fact**

63.    Another reason for appeal is that it contained multiple mistakes, misinterpretations and misapplications of law and/or disregard of the legal standards applicable. Many legal mistakes correlated with factual errors and omissions in the Final Order.  The Final Order indicates the IHO did not understand or was unwilling to address directly the legal issues presented by the Parents.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 63.

64.    The Final Order contained misapplications of legal standards for determining whether procedural rights were violated.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 64.

65.    It used incorrect standards for determining which IEP version was the document the Parent was to rely upon as a singular, written placement offer.  This also allowed the nonspecific IEP terms to give the District too much power to decide supports, service minutes and teaching approach without participation of the Guardian.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 65.

364784.2

66.    It failed to use the correct standards in determining whether the terms of an IEP are vague or subject to multiple interpretations.  This failure resulted in a Decision that allowed the District to neglect its duty to inform teachers of their specific responsibilities with regard to implementation.  It also resulted in allowing the District to fail to inform the Guardian as to how to cooperate with the District's program for Paulie and be involved in this program.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 66.

67.    It used incorrect standards for determining whether IEP was reasonably calculated to provide FAPE and for determining the length of time a District can take to provide an appropriate placement.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 67.

68.    It used inadequate standards for assessing appropriateness of the District's proposed placement at Meadow View as the least restrictive environment.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 68.

69.    It misstated testimony of the Guardian who actually wanted to observe possible District placements, but testified she was refused that opportunity by the District.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 69.

70.    It incorrectly added unilateral District assertions about programming and services in testimony rather than the actual terms within the four corners of the IEP when assessing appropriateness of Meadow View.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 70.

71.    It applied the incorrect LRE standards and ignored the instructional inclusion of nondisabled students in the Acacia Classroom.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 71.

72.    It failed to acknowledge the materiality of District admissions that it unilaterally created portions of IEP without Guardian's participation and input.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 72.

73.    IHO failed to explain why the testimony of the Guardian and her advocate, Mr. Michaels, could be discounted when they directly denied the appropriateness of Meadow View and denied the existence of a purported agreement at an IEP Meeting that Meadow View was appropriate.  There was no such agreement.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 73.

364784.2

74.    It misstated facts in evidence of Acacia's inclusiveness as a private school, and therefore misjudged Acacia as more restrictive than Meadow View.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 74.

75.    It misstated facts of the specific classroom proposed for Paulie at Acacia.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 75.

76.    It ignored Easter Seals' destruction of Paulie's behavioral records.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 76.

77.    It ignored the District school psychologist's admission that she destroyed protocols of disputed intelligence and other testing immediately after testing Paulie.  After being confronted with the express illegality of such destruction under state law and also confronted with evidence claiming that she had forwarded the protocols to the Guardian, she then reversed herself and claimed she had "forgotten" that she had brought a copy to the IEP Meeting but failed to give it to the Guardian.  Her story made no sense.  Clearly, she was changing her story to try to fit the documents at hearing.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 77.

78.    The Final Order failed to make credibility determinations on key witnesses, such as the District Psychologist, yet relied upon their testimony in the face of conflicting evidence, and even relied upon the bare assertions of the District's counsel without any basis in evidence.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 78.

79.    The Final Order ignored the significance of the needs of Paulie as a child on the autistic spectrum who gets upset in large, noisy classroom and nonacademic settings like the ones proposed and claimed in testimony for Meadow View.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 79.

**Least Restricted Environment Miscalculated**

80.    The Final Order ignores the purpose of the legal requirements of least restrictive environment.  It misinterprets the Plaintiff's evidence and overstates the District's evidence regarding least restrictive environment and related services by which the Final Order favored the District's proposed program and placement.  Moreover, it completely disregards and fails to explain substantial conflicting testimony about the placements.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 80.

81.    The purpose of the least restrictive environment preference in IDEA is to encourage children with disabilities to be educated with nondisabled children to the maximum extent appropriate.

**ANSWER:**    The School District admits the allegations contained in Paragraph No. 81.

82.    The record also shows that the District's proposed IEP is not as the District witnesses testified to was.  It was more restrictive than claimed by the District witnesses.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 82.

83.    The record shows that Acacia's instructional classroom is integrated with students who are not disabled, whereas Meadow View's instructional classroom is segregated and contains no nondisabled students.

**ANSWER:**    The School District denies that Acacia's classroom is integrated with nondisabled students, but admits that the Acacia classroom may contain, at most, two nondisabled students.

The School District admits the remaining allegations contained in Paragraph No. 83.

## VIII.   SUPPLEMENTAL EVIDENCE

84.    The Guardian's request consideration here of additional evidence for admission that was denied by the IHO or was otherwise unavailable to the Plaintiffs during that hearing.

**ANSWER:**    The School District denies that Plaintiffs are entitled to obtain or present additional evidence in this case.

85.    The Plaintiffs request discovery and admission of all correspondence, including email records between the District and its contractor, Easter Seals, regarding the Guardian and Paulie.  Prior to hearing, the Plaintiffs had requested all records regarding the Plaintiffs from the District and Easter Seals, including emails, but the District claimed there were only a few emails that had been already disclosed.  Hearing testimony, however, revealed that there were many more emails between the District and Easter Seals than those disclosed.

**ANSWER:**    The School District denies that Plaintiffs are entitled to obtain or present additional evidence in this case.

86.    The Plaintiffs request discovery and admission of all records created by Easter Seals regarding Paulie's behavior.  Hearing testimony revealed for the first time that Easter Seals destroyed all behavioral records of Paulie.  Easter Seals and the District had not disclosed this fact previously, in spite of disclosure requests.

**ANSWER:**    The School District denies that Plaintiffs are entitled to obtain additional evidence

16

in this case.  The School District denies further the remaining factual allegations contained in Paragraph No. 86.

87.     If the Easter Seals records have been destroyed as Easter Seals staff stated in testimony, then the Plaintiff intends to submit a motion regarding the intentional destruction of evidence.

**ANSWER:**     As Paragraph No. 87 appears to be a statement of legal strategy, no answer is required.

88.     The Plaintiffs request admission of certain phone records of the Guardian.  These records refute District testimony claiming that no phone call was conducted with the Guardian regarding her attempts to cooperate with the District in conducting observations of potential placements.  The Guardian had no indication prior to hearing that the existence of calls with the District personnel would be denied by District personnel.

**ANSWER:**     The School District denies that Plaintiffs are entitled to present additional evidence in this case.

89.     The Plaintiffs request a discovery order to conduct a professional observation of the self contained classroom and regular education settings assigned to Paulie in the June 14, 2007 IEP and admission of the resulting professional observation report.

**ANSWER:**     The School District denies that Plaintiffs are entitled to obtain or present additional evidence in this case.

90.     The District did not even state that Meadow View was a placement option until 6/14/07.  For many months prior to the June 14, 2007 IEP Meeting, however, the Guardian had attempted to cooperate with the District to observe possible placements for Paulie, but the District kept obstructing this process.  The District discouraged the observation of the Meadow View setting by the Guardian.  Twice the Guardian has offered to place Paulie in a temporary, diagnostic placement to determine whether Paulie can be educated in the District's proposed Meadow View placement, but the District disrupted the Guardian's first attempt, then refused its second attempt.

**ANSWER:**     The School District admits that Meadow View was first proposed as a placement option on 6/14/07, but denies the remaining allegations contained in Paragraph No. 90.

91.     The Plaintiffs request admission of official certifications and records documenting the nature of Acacia Academy as a private school that serves both disabled and nondisabled students, and that each class setting contains nondisabled children as well as disabled children.

**ANSWER:**   The School District denies that Plaintiffs are entitled to obtain or present additional evidence in this case.

92.     The Plaintiffs request that ISAT Scores be admitted into evidence to refute the District's inaccurate claims about them, Acacia's evaluation and Paulie's current academic progress.  This evidence was unavailable to the Plaintiffs prior to the deadline for hearing.

**ANSWER:**   The School District denies that Plaintiffs are entitled to obtain or present additional evidence in this case.

93.     The Plaintiffs request that a new psychoeducational evaluation be allowed for the Plaintiffs to professionally confirm and interpret the ISAT Scores misrepresented by the District at hearing and that the resulting Report be admitted along with the observation report.

**ANSWER:**   The School District denies that Plaintiffs are entitled to obtain or present additional evidence in this case.

94.     The Plaintiffs request that additional evidence be considered in this case regarding records in the possession of the District and its agents.

**ANSWER:**   The School District denies that Plaintiffs are entitled to obtain or present additional evidence in this case.

## COUNT I

**DISTRICT HAS DENIED FAPE FOR PAULIE BY ITS PROCEDURAL VIOLATIONS OF IDEA & BY DENYING AN APPROPRIATE PROGRAM & PLACEMENT RESPONSIVE TO HIS UNIQUE NEEDS IN THE LEAST RESTRICTIVE ENVIRONMENT SINCE HIS PLACEMENT AT EASTER SEALS BECAME INAPPROPRIATE, INCLUDING PERIODS OF DENIAL OF NEEDED SERVICES DURING STAY PUT.**

**ANSWER:**   The School District denies the allegations contained under Count I.

95.     For paragraph 95, Plaintiffs incorporate all of the preceding paragraphs (1-94) by reference.

**ANSWER:**   The School District incorporates its responses to the preceding Paragraphs 1-94 as if fully set forth here.

18

364784.2

96.    The District's placement at Easter Seals was inappropriate for Paulie for many months without a change within a reasonable time by the District.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 96.

97.    The District's proposed IEP of 6/14/07 for Paulie was not reasonably calculated to provide Paulie with educational benefit.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 97.

98.    The District violated IDEA by not providing a singular, written offer of placement immediately after the end of the 6/14/07 IEP Meeting.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 98.

99.    The District's proposed placement at Meadow View is inappropriate and not the least restrictive environment.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 99.

100.    The Guardian's proposed placement at Acacia was appropriate and the least restrictive environment for Paulie.

**ANSWER:**    The School District denies the allegations contained in Paragraph No. 100.

THEREFORE, Plaintiffs Richard Paul E. and Annette S. B. individually and as his Parents and Next Friends respectfully pray that this Court enter judgment in their favor and against the Defendants as follows:

A.)    Find that the Plaintiffs are the prevailing party in this matter and reverse the Decision and Order of the IHO in this case and rule in favor of the Plaintiffs;

**ANSWER:**    The District denies that Plaintiffs are entitled to such a finding.

B.)    Find that the District has violated the procedural safeguards granted by IDEA to the Plaintiffs.

**ANSWER:**    The District denies that Plaintiffs are entitled to such a finding.

C.)    Find that the temporary denial of stay put services during litigation and other violations of law were procedural safeguard violations.

**ANSWER:**    The District denies that Plaintiffs are entitled to such a finding.

D.)    Find that the District's proposed IEP of 6/14/07 was not reasonably calculated to provide educational benefit because it offered an inappropriate placement that was not in the least restrictive environment.

364784.2

**ANSWER:**    The District denies that Plaintiffs are entitled to such a finding.

   E.)    Order compensatory education to make the Plaintiffs whole for the deprivation of education opportunity for Paulie and for the denial of the Guardian's opportunity to participate in the formulation of FAPE.

**ANSWER:**    The District denies that Plaintiffs are entitled to the relief requested.

   F.)    Order that Paulie be placed at Acacia Academy at public expense, including all normal and necessary costs of attendance, including all tuition, fees and related services, including transportation.

**ANSWER:**    The District denies that Plaintiffs are entitled to the relief requested.

   G.)    Order the Defendants to pay costs, including court costs and reasonable attorney's fees for this action;

**ANSWER:**    The District denies that Plaintiffs are entitled to the relief requested.

   H.)    Award such other different and appropriate relief as justice may require.

**ANSWER:**    The District denies that Plaintiffs are entitled to the relief requested.

   **WHEREFORE**, Defendant Plainfield Community Consolidated School District No. 202 requests that judgment be entered in its favor and against Plaintiffs.

        Respectfully Submitted,

        PLAINFIELD COMMUNITY CONSOLIDATED
        SCHOOL DISTRICT 202,

          s/ Darcy L. Kriha – 06210325
           One of Its Attorneys

Darcy L. Kriha – 06210325
dlk@franczek.com
Donald Y. Yu – 06287737
dyy@franczek.com
FRANCZEK SULLIVAN P.C.
300 South Wacker Drive, Suite 3400
Chicago, Illinois 60606
(312) 986-0300

Dated:  January 17, 2008

364784.2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that she caused the foregoing **Defendant's**

**Answer to Plaintiffs' Complaint** to be served upon the attorney listed below by filing with the

Clerk of the Court using the CM/ECF system, on this 17th day of January, 2008:

Joseph Daniel Thomas, Esq.
10707 North State Road
Demotte, IN 46310

s/ Darcy L. Kriha – 06210325
Darcy L. Kriha

364784.2
